Please call the last case of the day. Ben Barnhart v. Workers' Compensation Comm'n Case No. 5-11-0518 Thank you. May it please the Court, my name is Christina Cusby. I represent the petitioner Ben Barnhart and his claim for compensation under the Illinois Workers' Compensation Act. I think this is probably the first case today that's had a De Novo review standard because we simply don't dispute the facts of the case if the record bears out. So I'll dive right into the legal argument that we have in this case, which is that this exodus is compensable under one of three theories. Petitioner's strongest argument would be that of the personal comfort doctrine. We would also submit that it would be compensable under the Good Samaritan Doctrine or the Traveling Employee Doctrine. With regard to the personal comfort doctrine, if the employee is performing acts reasonably necessary to personal comfort, those acts can arise out of and in the course and scope of the employment. So it was jump-starting a co-worker's vehicle incidental to his personal comfort? I believe that the case of All Steel would be controlling in this matter. In All Steel we have an employee who was worming his car on a lunch break and the car caught on fire. His car? I believe so, yes. This is a co-worker's car. Did he have to take the co-worker's car? Couldn't he have taken his car? He certainly could have taken his car and he testified to that. But he was, again, active personal comfort, going to lunch with his co-workers and the car didn't start. He was seeking personal comfort and seeking lunch and this was the way he was If anybody leaves to go someplace for lunch, if that's part of the personal comfort doctrine, wouldn't any injury during lunch hour be compensable under that argument? I think that takes it a little too far. The rule is conduct that's reasonably foreseeable and expected. And in this case, the fact that the co-workers all went to lunch together, reasonably, a matter of the record, reasonably foreseeable and expected, as a matter of fact, the supervisor wasn't. Is it reasonably foreseeable somebody's car is going to break down and instead of trying to jump into another car they decide to jump start their car? Is that reasonably foreseeable? In this particular case, I would submit that it is and I would direct the court to page 103 of the transcript where the supervisor said I'm sorry, I think I mischaracterized I think my client testified, yes, this has happened before at work and we've done this at work before and the supervisor was also aware that there were vehicle problems that day. So there's unequivocal testimony that wasn't disputed by the petitioner saying, yeah, we worked on his car before at work because it wouldn't start. What are the other bounds of your argument of the personal comfort? If somebody's car doesn't start and they jump on a longboard and start going down the street, I mean, he's got to have lunch after all. Isn't that foreseeable? He could jump on a longboard? I don't think that that, and let me go to my legal basis for saying that that is a foreseeable, it's a quote from The longboard or the starting of the co-worker's car? And that's the thing is, I'm not asking in general how far reasonable, foreseeable can go. In this case, I do believe it's reasonable, foreseeable and the all-steel case at page 504 says, for example, if a car simply did not start, it would be reasonably foreseeable that an employee would return to the building to telephone a towing service or to ask someone to help jump start the car. Did they actually jump start this car? Yeah, it started and they went to McDonald's. What's a jump start? It's when you put battery cables on... Oh no, they didn't. You're right. Thank you. I apologize. That's a good question. And my dad's a mechanic, he'd be so embarrassed. They jiggled the battery cables, so there was no... They were likely corroded or not on very securely and they just got a good connection and that was it. I think the testimony in the record was it was cold and that's why his car didn't start that morning and why he was late for work. And so, I'm sure it was cold. I mean, that's extrapolating obviously, but the testimony was that this particular man's car, Mr. Green, didn't start that morning. He was a half hour late for work. I think on cross-examination, Ms. Barbieri asked why and he said it was cold and the car wouldn't start. So, in this case again, in this case in particular, I believe it's reasonably foreseeable that that would happen again on a cold day and as a matter of law, under the all-steel case, asking someone to help jump-start the car, the court's already found that that would be reasonable if the car didn't start at lunch. How was the person injured in the all-steel case? In the all-steel case, slipped and fell on his... Right, so what they're saying is if your car won't start, it's reasonably foreseeable you might have to go back in to make a phone call or whatever and you might slip and fall. But isn't that different than jiggling the battery cables? Factually, yes. Because that has nothing to do with... Factually, yes, that is the distinction that he didn't go back in, but again, we're not on the... and we're going to hear that over and over again in this argument... we're not on the employer's premises, but reasonably in this case, the all-steel case says, yeah, you would do what you can to get the car going so you can go get lunch. And in this case, I believe that that was reasonably foreseeable, not only that they'd done it before in this particular job, but that they knew the car was having problems that day. So I would submit that the Personal Comfort Doctrine does apply, and I would also submit that the Commission's reasoning, first of all, under this doctrine, they don't... in their order, they don't even address, neither does the circuit court, don't even address the all-steel case. Even though that was argued by a petitioner at all three stages, it was never addressed by any court as to why that case wouldn't control in this matter. And what they did distinguish... and I think I'm getting myself confused... give me one second... with regard, they did cite the Circuit City case. And again, of course, if the Personal Comfort Doctrine doesn't apply, any petitioner would use the Circuit City case to argue then the Good Samaritan Doctrine, which is what we did. But under the Personal Comfort Doctrine, the Circuit Court... I'm sorry, the Commission analogized the Circuit City case and said, well, this wasn't for his own personal comfort. In the Circuit City case, he was helping another employee get his bag of chips. There was no indication that he needed a bag of chips. In this case, I think it's pretty clear that that's not really a basis for a distinction because they were both seeking lunch, they were both seeking transportation. What about the Good Samaritan Doctrine? How does that help? The Good Samaritan Doctrine, again, this is a case, again, where it's undisputed in the record that we all try to help one another out. That's the supervisor's work. We help each other out, this has happened before, this is reasonable, foreseeable, and we're in a situation where my co-worker needs help. And so, just like in the All Steel case where they said it would be reasonable, foreseeable for someone to go in and make a call, or go in and ask a fellow employee to help jump-start the car, well, then it would be reasonable, foreseeable to ask for that type of help in this situation. But what if they had gone to McDonald's and had their lunch and then come out and had to jiggle the cables? I think at that point, you're beyond the scope of reasonable, foreseeable unless you find them a traveling employee. But what if they go out to this non-owned parking lot to leave to go to lunch? Why would it be compensable there? If he's not a traveling employee, the law is that any accident that happens within a reasonable time before and after work is compensable. And I think in this... If he's not a traveling employee, anything that happens within a reasonable time before or after work... Reasonable time period before or after work... Where are you getting that? It's in my head. Generally, I think the law is the other. Traveling to and from work every day is not compensable. Unless you're a traveling employee. That's in my other brief. I have the case. I bring it up on reply. And it may be specific to employer premises cases. That might be... You might be taking it out of context, I think. I'll check that site before I go further down that road. But no, I believe that in this case that this is a reasonably foreseeable act required on the job site. Again, because my client reported to the job site. He did his work at the job site. There's no food available. This isn't the employee's premises. Again, what if the tire had to be changed? How far do you take this personal comfort? According to you, then, they decide to use one car. Anything that they do to get this car going is apparently okay. As opposed to simply staying there, walking to a place, or using another car. I wouldn't go that far. That has to be your argument. No, I wouldn't go that far. But in this case, under these circumstances, I do believe, especially under the All Still case, that it was reasonably foreseeable. The only link to his employment and all this activity is that he was there with co-workers. That's it. He was off the premises. He wasn't on the job. He wasn't doing part of his job. He just happened to be with his co-workers. How does that make it commensal? In your brief, you seem to attach some significance to the fact that Kincaid, the supervisor, is there and observing this. Does that further support that this was some sort of... Does that strengthen your case somehow? He wasn't obviously injured during C-MET work. So we have to look for an exception or a legal exception. That's why I'm arguing these three exceptions. Those exceptions don't apply if he's doing something unreasonable or unnecessary. I don't think what he's doing is unreasonable or unforeseeable according to the case law and according to the facts of this case. Additionally, the Commission specifically found that there was no evidence in the record that respondent had knowledge of them jump-starting each other's vehicles, which is absolutely refuted by page 103 of the record, and that there is no evidence that respondent... You're saying they had knowledge because he was watching them right then. But no. Petitioner also testified on page 103 of the record that that car wouldn't start. Is that the first time that that had happened? No. Had you had to help him with the car before? No. Petitioner testified to that. But how does that make it foreseeable to the employee? That's the test. Whether it's foreseeable to the employee, to the employers where it gets attached. And the next question, was that when you guys were at work, the answer is yes. That's on page 103. That shows some kind of knowledge by the employer that this... I believe that was shown through supervisor keychains. Didn't you argue before that this particular car and its owner were late that morning? It's testified to in the record. I don't know. Well, I mean, is it factually true or not that this car and its owner were late to work that day because the car wouldn't start? Yes. And that was told to the employer? Ken Cade is the one that testified to that on redirect, if my memory is serving me correctly, on the cross-examination. He testified... I believe Mr. Keefe asked my client if he knew that an employee was late. My client didn't know. And when Ken Cade was on the... the supervisor was on the stand, he was asked, was he in fact late? And he said yes during Mr. Keefe's examination. Then Ms. Barbieri asked, you know why? And he said, yeah, it was cold that day and his car wouldn't start. Okay. So that's one notice to the employer. Besides the fact that he sat there and watched it happen, knew it was happening, and that petitioner testified that it happened before. That's simultaneous. I mean, it happened right then. The petitioner had also testified that it had happened before. And I would have to check the record. I don't want to misquote it. I believe Ken Cade testified he knew that they had had car trouble before. I don't know, though, how... I can't find that page off the top of my head. So, I believe that the findings of the commission specifically with regard to that the employer had no knowledge are incorrect. That the employer did not ask for yes. I believe that there is evidence in the record to support that. And that this is an unreasonable or unnecessary risk. I believe that the law and the facts of this case show that it's not. Also, we would submit the petitioner was not on his employer's side, but was required to travel away from that. And under the traveling employee doctrine, this would be something that would be required him to leave and eat. And transportation problems, again, would be covered under that doctrine. Why was he required to travel? He has to travel to the job site. The test for traveling employees... Do you go to the employer's premises? And he testified no. He had worked for Cordy and Louie John for several years, I believe. And this is my third one, so I don't intend to miscite if I'm wrong. But he had been on this job site three to four months doing concrete work, and that this was not the employer's premises. So I believe that would support that he's a traveling employee because travel away from the employer's premises is required as a basic function of the job. He can't do the cement work on Cordy and Louie John property in Highland, Illinois and send it to Hillsboro. He goes to Hillsboro to work for the benefit of the employer, which is one of the tests. Should we raise the issue of traveling employee below? I don't believe it was. Why would it not be forfeited? This is a DeNovo review. If we decide it's not a DeNovo review, then what happens? I apologize. No, I couldn't hear you. I was apologizing because I couldn't hear the question. Sorry. This is a matter of forfeiture if it's a DeNovo review. If it's not raised in the lower court, then it's forfeited. I mean, it's not like, because it's a DeNovo review, you can bring up anything that's never been brought up before in our court. I honestly don't have the proposed decisions with me to know if it was brought up there. I didn't try this case. But as far as I've seen from the briefs, I do think the I'm just alerting you to the fact that that's a problem if it's not raised below. I appreciate that, Your Honor. Thank you, counsel. Mr. Keith, you may respond. Please support counsel. Okay, people have to go lunch. Why isn't this personal comfort? Tell us succinctly why this is not a personal comfort document. I think this is not a personal comfort case in large part because there is positively no connection to the employer at all. I think a majority of your personal comfort cases have been handed down with some sort of a connection to the employer. The chair broke. The steps were wrong. You were forced to get lunch for your boss. Something along those lines. What about a defective parking lot? You just go to your car for lunch and you fall on a defective parking lot. It seems to me, Your Honor, that if you were falling in your employer's parking lot, I do believe that it would fall somehow contensible, whether it would be personal comfort. It probably would if you were heading to lunch. But in this instance, of course, once again, the element that caused the injury has no connection to the employer. The car has no connection to the employer like the vending machine in Circuit City. The parking lot where he was struck wasn't even an issue. For the personal comfort doctrine to apply, whatever it is that causes the injury has to be in some way connected to or related to the employer, is that what you're saying? I think to the employer or somehow to the employment. In other words, where you are, possibly even the thing that caused the injury, the chair, the car, the vending machine. I'm sorry, I thought I heard you. The vending machine. And I think that those elements in this case are completely... There's no connection to the employment or to the employer, you're saying, in this case. There's no connection to the employer or the employment in this case. I don't think there's any connection to the employer other than the fact that he was working that day. He wasn't working at the time the incident occurred. He's off the clock. He's not on the premises of the employer. He's not even, frankly, on the little job site. If they were pouring concrete in that area, it was a parking lot that was at least some feet away. I don't know exactly how many feet there was from where he was working itself, but there was nothing within the employer's control to do anything about to avoid or keep the incident from occurring. The supervisors watching this, did he say anything at all? Well, I think that there's two things that have to be discussed with that. One, whether he saw it or not doesn't mean he could do anything about it, both from a physical standpoint. If he's 60 feet away and the guy gets out of the truck and he lifts the hood and he starts to jiggle, I'm not sure physically he could do anything about it. But as Mr. Kincaid testified, he's not allowed to say anything about it. He can't tell him what to do. He's not on the clock. He's not on his premises. It's not a work activity. Does it make a difference if he's on the clock? I think it brings it closer, Your Honor, but I'm not certain that even under these circumstances, if he is off the premises, not on a work activity. What you're saying is he's not in the course of employment. I'm sorry? Then how can he be compensated? I agree, he shouldn't be compensated. So why are we talking a rising out of or anything? Well, I mean, in terms of the incident itself, I don't think that it is. I mean, I don't think it's an incident, a work accident, be it a rising out of or in the course of. I would agree. It's got to have both to be compensated. I agree. I agree. And I think that the Good Samaritan is much the same way. I mean, there's no element that brings it into any of these exceptions. I would agree. All right, thank you. Questions? I don't believe there are. Thank you, Mr. Chief. Ms. Cooksey, you may reply. Oh, I'm basically done, Your Honor. Can I ask you a question? If a group of employees on their own time decide to go to McDonald's for lunch and one of them chokes on a French fry, is that compensable? Certainly a personal comfort, isn't it? He's got to eat lunch. It is, Your Honor, and if they're not a traveling employee, I take it, then, no, it wouldn't be compensable. Next question. You had asked just briefly whether or not Mr. Kincaid was aware. I don't have the record pages, I apologize, but page 35 of the testimony, he does say that he was not only aware that he was late that day because it was chilly and his truck wouldn't start, but he was aware that he had had problems with the truck starting before. So that's something that's clear in the record, and I did not find that site. You may want to check it, though. What? You may want to check it. I will. Thank you. Thank you, counsel, both, for your arguments in this matter. It will be taken under advisement with dispositional issues.